# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA 02 APR -2 AM 10:39
### SOUTHERN DIVISION

| | |
|---|---|
| **WAUSAU UNDERWRITERS INSURANCE COMPANY,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] CV-01-N-0065-S |
| vs. | ] |
| | ] |
| **TORCHMARK CORPORATION, et al.,** | ] |
| Defendant(s). | |



**ENTERED**

APR 0 2 2002

### Memorandum of Opinion

## I.     Introduction

The court has for consideration the motion for summary judgment of plaintiff Wausau Underwriters Insurance Company (hereinafter "Wausau"), filed November 14, 2001. (Doc. # 32). Wausau seeks from this court a declaration that it has neither a duty to defend nor indemnify the defendants; Torchmark Corporation, Liberty National Life Insurance Company, United American Insurance Company, and United Investors Life Insurance Company (hereinafter referred to collectively as "Torchmark"), in twenty-eight (28) lawsuits that underlie this declaratory judgment action, pursuant to the terms of commercial general liability policies issued by it to Torchmark. Although the lawsuits vary in the precise claims alleged, they generally present claims involving fraudulent misrepresentation, fraudulent suppression, negligent misrepresentation, negligent hiring, training, and supervision, and wanton hiring, training, and supervision, breach of contract and bad faith. (Doc. # 49, Ex. 1).



In support of its motion, Wausau directs the attention of the court to two exclusions in the policies at issue: (1) the Insurance and Related Operation Exclusion (hereinafter "IRO"); and (2) the Designated Professional Services Exclusion (hereinafter "DPS"). According to Wausau, these exclusions absolve it of any duty to defend or indemnify Torchmark, given the claims alleged in the lawsuits. The issues have been briefed by the parties and the court finds the questions presented now ripe for decision. Upon due consideration, the motion of plaintiff is due to be granted in part and denied in part.

## II.   Background

Plaintiff Wausau is a mutual insurance company organized under the laws of the State of Wisconsin. It has a primary place of business in Wisconsin, and is licensed to do business in the State of Texas. (Doc. # 10, ¶ 1). Torchmark Corporation is a company organized under the laws of the State of Delaware, with subsidiary companies involved in, *inter alia*, the insurance industry. (Doc. # 10, ¶ 2; Doc. # 12, ¶ 2). Three of these subsidiaries include Liberty National Life Insurance Company, United American Insurance Company, and United Investors Life Insurance Company. (Doc. # 33, p. 7, Doc. # 49, pp. 3-5). Between June 1, 1991, and June 1, 2000, Wausau provided commercial general liability insurance to Torchmark pursuant to commercial general liability (hereinafter "CGL") policies issued during that time. Torchmark appeared as the named insured on the policies; the three subsidiary defendants appeared as additional named insureds.[1]

---

[1] Wausau issued seven separate policies to Torchmark and the additional named insureds during the period of time between June 1, 1991, and June 1, 2000. (Doc. # 33, ¶ 3). The parties agree that while the language employed by these policies differs slightly throughout the years, the differences are inconsequential for purposes of the court's consideration of Wausau's motion for summary judgment. (*Id.*, ¶ 4; Doc. # 49, pp. 3-5). The court is thus limiting its consideration of policy language to that contained in CGL policy 1420-04-107468 (Doc. # 34, Ex. 2).

Between May 1999, and September 2000, the three subsidiary defendants were named as defendants in more than 28 lawsuits filed in Alabama, California, Mississippi, and South Carolina.[2] Torchmark requested Wausau defend and indemnify the three subsidiaries in connection with these lawsuits, pursuant to the CGL policy in effect. Wausau denied Torchmark's requests, claiming that it had no duty to indemnify or defend the subsidiaries pursuant to the CGL policy. (Doc. # 33, pp. 8-9). Wausau subsequently commenced the above-styled action in the Northern District of Texas, on May 8, 2000. The action was thereafter transferred to this court on January 5, 2001. (Doc. # 1).

Bearing upon the outcome of this action are two exclusions endorsed in the CGL. One exclusion is the IRO exclusion, which provides in pertinent part:

> The insurance does not apply to 'bodily injury', 'property damage', 'advertising injury', or 'personal injury' for which the insured may be held liable because of:
> 1.  Because of:
>     a.  Any obligation assumed by any insured; or
>     b.  The failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise.
>         With respect to any contract or treaty of insurance, reinsurance, suretyship, annuity endowment or employee benefit plan, including applications, receipts or binders.
>
> . . . .
>
> 3.  Resulting from the rendering of, or failure to render the following professional services:
>     a.  Advising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative thereof;
>     b.  Effecting insurance, reinsurance or suretyship coverages;

---

[2] Twenty-eight of these lawsuits have been selected by Wausau as factual predicates for the above-styled action. (Doc. # 33, ¶ 8; Doc. # 34, Ex. 3).

      c.    Investigating, defending or settling any claim under any contract or treaty of insurance, self-insurance, reinsurance or suretyship;

      d.    Auditing or maintaining accounts or records of others;

      e.    Conducting an investment, loan or real estate department or operations;

      f.    Acting in any capacity as a fiduciary or trustee for mutual funds, pension or welfare funds, annuities, endowments, employee benefit plans or other similar activities; or

      g.    Performing any claim, investigative, adjustment, engineering, inspection, consulting, survey, audit, appraisal, actuarial or data processing service for a fee.

(Doc. # 34, pp. 85-86). The other exclusion is the DPS exclusion, which provides: "With respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury', 'property damage', 'personal injury', or 'advertising injury' due to the rendering or failure to render any professional service." (Doc. # 34, Ex. 2, p. 82). The term "Professional Services" is described as "Insurance company and insurance agencies of any kind, including all operations of additional named insureds." (*Id.*). According to Wausau, the term "Professional Services" more exactly means professional acts or services that arise out of a vocation or occupation, and require specialized knowledge and skill in their exercise. (Doc. # 33, pp. 19-20). Wausau maintains that these exclusions specifically exclude coverage for the types of claims asserted against the subsidiaries: that is, claims arising out of the insurance and related operations of the subsidiaries, and claims arising out of the rendering or failure to render any professional services. As all claims would thus be excluded from coverage, Wausau would have no duty to defend or indemnify the subsidiaries in the underlying lawsuits.

4

The Torchmark defendants disagree. They contend that "[m]ost, if not all, of the underlying lawsuits contain claims arising out of the operations of the Defendants' businesses that are administrative in nature and that are routinely covered by commercial general liability policies." (Doc. # 49, p. 3). They likewise assert that the underlying lawsuits contain claims alleging general negligence and/or wantoness that do not fall within the exclusionary reach of the policy language cited *supra*. (*Id*., pp. 3-4). Finally, the Torchmark defendants aver that Wausau did not deliver copies of the policies at issue in this action to any of the individual subsidiaries. (*Id*., pp. 4-5). Wausau naturally disputes these assertions. (Doc. # 57, Statement of Facts, pp. 1-2). With respect to the final point, however, Wausau observes that it delivered copies of the policy both to Torchmark and to the insurance broker hired to negotiate the policy for Torchmark and the subsidiaries. (*Id*., p. 2). Remaining facts are discussed in the body of this memorandum as they become relevant to the court's analysis.

## III.    Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also DeJulio v. Georgia*, 276 F.3d 1244, 1248 (11th Cir. 2001). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

5

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted); *see also Comer v. City of Palm Bay*, 256 F.3d 1186, 1192 (11th Cir. 2001); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met this burden, "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Comer, supra*.

The court must grant a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). In rendering its decision, "[a] court 'must draw all reasonable inferences

in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves*, 530 U.S. at 150); *see also Comer*, *supra*.

## IV.   Discussion

### A.   Choice of Law

The parties do not appear in dispute over what forum's law this court should apply. Wausau is relatively ambivalent on the issue, observing little difference between Texas law and Alabama law and apparently content with an application of either. (Doc. # 33, p. 12). The Torchmark defendants approach the question from a slightly more sophisticated standpoint. They observe that the posture of this action – as one transferred from the State of Texas – requires this court to apply Texas choice of law rules. These choice-of-law rules, however, dictate the application of Alabama law over the issues presented. (Doc. # 49).

A federal court exercising its diversity jurisdiction properly employs the choice-of-law rules of the forum state. *See Boardman Petroleum v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). When a defendant successfully moves to transfer an action pursuant to 28 U.S.C. § 1004(a), however, the transferee court properly employs the choice-of-law rules of the transferor court. *See Boardman Petroleum*, *supra*; *see also Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1072 (11th Cir. 1987) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 636 (1964)). The instant case presents an action that began in the State of Texas before being transferred to the Northern District of

7

Alabama, at the behest of the defendants. This court must therefore employ Texas choice-of-law rules to determine what law controls the resolution of the issues presented.

"Under Texas choice-of-law principles, contract disputes are governed by the law of the state with the most significant relationship to the particular substantive issue." *Schneider Nat'l Transport v. Ford Motor Co.*, No. 00-41322, 2002 U.S. App. LEXIS 763, at *8 (5th Cir. Jan. 18, 2002); *see also W.R. Grace & Co. v. Continental Casualty Co.*, 896 F.2d 865, 873 (5th Cir. 1990); *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Texas 2000); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 & n.5 (Texas 1984). Those factors relevant in the assessment of the most significant relationship include the place of contracting; the place of negotiation of the contract; the location of contract performance; the location of the subject matter of the contract; and the domicil, residence, nationality, place of incorporation and place of business of the parties. *See Access Telecomm., Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 705-06 (5th Cir. 1999); *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Texas 1991). The defendants argue that these factors, when applied to the instant case, dictate an application of Alabama law to the court's consideration of the insurance policies at issue in this lawsuit. The court agrees.

At the outset, the court notes that, with the exception of United American Insurance Company, Torchmark and its subsidiaries are non-Texas based corporations with principal places of business in Alabama. (Doc. # 49, p. 6). Negotiation of the insurance policies at issue in this action transpired in Alabama. All but one of the policies was mailed to Torchmark in Alabama (the policy issued for 1999 to 2000 was mailed to Torchmark in Texas). (*Id.*). According to Wausau, the policies were also mailed to the brokering agent,

8

located in Alabama. (Doc. # 57, Statement of Facts, p. 2; *see also* Doc. # 49, p. 6). Perhaps most compelling, however, is the fact that twenty-four of the lawsuits filed against subsidiary Liberty National and underlying this action, were filed in or are pending in Alabama courts.[3] All of these factors, in totality and against the standards set forth *supra*, leads this court to conclude that Alabama is the state with the most significant relationship to the substantive issues presented by this action. This court will, therefore, apply the law of Alabama to the interpretation of the insurance policy provisions at issue.

### B.   The Duties of Wausau and the Policy Exclusions

#### 1.   General Principles of Alabama Insurance Law

The law in Alabama is clear as to the duties of an insured to defend and indemnify.[4] The former is more extensive than the latter, and is primarily measured in a particular case by the allegations contained in the complaint lodged against the insured. *See Acceptance Ins. Co. v. Brown*, No. 1991938, 2001 Ala. LEXIS 255, at \*27-\*29 (June 29, 2001); *Blackburn v. Fidelity & Deposit Co.*, 667 So. 2d 661, 668 (Ala. 1995). "If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Acceptance Ins. Co.*, at \*28.; *see also Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So.

---

[3] *See* Doc. # 36, Ex. 3. In fact, of the twenty-eight lawsuits set forth in this exhibit, all but three were filed in or are pending in Alabama courts. As noted *supra*, twenty-four of the Alabama lawsuits name Liberty National. The twenty-fifth names United American Insurance Company. The three non-Alabama lawsuits – two state court suits in California and South Carolina, and one federal district court suit in Mississippi – name United Investors Life Insurance, Liberty National, and Liberty National respectively.

[4] Although the duties to defend and indemnify are separate and distinct duties, the court notes here that Wausau's motion for summary judgment treats the indemnification question as being subsumed by the defense question. For ease of analysis, the court will treat the issues similarly, and focus solely upon the question of whether Wausau has a duty to defend.

2d 100, 102 (Ala. 1977). Thus, whether Wausau possesses any obligation to defend and indemnify Torchmark and its subsidiaries depends upon whether the claims alleged against the subsidiaries fall inside or outside the coverage established by CGL policy 1420-04-107468.

"A contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, No. 1001305, 2001 Ala. LEXIS 389, at *20 (October 26, 2001); *see also Safeway Ins. Co. v. Amerisure Ins. Co.*, 707 So. 2d 218, 221 (Ala. 1997). Exclusions ambiguous in their scope and effect will be construed narrowly, so as to provide maximum coverage for the insured. *See Twin City Fire Ins. Co.*, at *21; *Auto-Owners Ins. Co. v. American Cent. Ins. Co.*, 739 So. 2d 1078, 1082 (Ala. 1999); *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379-80 (Ala. 1996); *Blackburn v. Fidelity & Deposit Co.*, 667 So. 2d 661, 672 (Ala. 1995). When an insurance contract is unambiguous in its terms, however, the court must enforce it as written. *See Twin City Fire Ins. Co.*, at *10-*11.

## 2. The CGL Policy Exclusions

Wausau maintains that two CGL policy exclusions preclude coverage for the claims alleged against the subsidiaries. It argues that both the IRO exclusion and the DPS exclusion specifically preclude the existence of any duty to defend or indemnify Torchmark and its subsidiaries against claims such as those alleged in the underlying lawsuits. In advancing this argument, Wausau does not affirmatively demonstrate how the exclusions preclude coverage for the claims asserted against the subsidiaries. Instead, Wausau cites

10

the court to several cases purportedly applying similar exclusions to preclude coverage for like claims. Wausau also argues that the extension of coverage to the underlying claims would essentially transform a CGL policy into a professional liability policy.

The two exclusions upon which Wausau predicates its declination of coverage represent stark contrasts insofar as the language employed by them is concerned. The IRO exclusion is quite specific in its terms. Parts 1a and 1b preclude coverage that might otherwise apply to: (1a) any obligation assumed by any insured, or (1b) the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise; *with respect to any contract or treaty of insurance, reinsurance, suretyship, annuity endowment or employee benefit plan, including applications, receipts or binders.*[5] Part 3 sets forth a professional services exclusion that precludes coverage that might otherwise apply to the rendering or failure to render the professional services of: (3a) advising, inspecting, reporting or making recommendations in the insured's capacity as an insurance company, consultant, broker, agent or representative thereof; (3b) effecting insurance, reinsurance or suretyship coverages; (3c) investigating, defending or settling any claim under any contract or treaty of insurance, self-insurance, reinsurance or suretyship; (3d) auditing or maintaining accounts or records of others; (3e) conducting an investment, loan or real estate department or operations; (3f) acting in any capacity as a fiduciary or trustee

---

[5] Although the IRO exclusion is not entirely free of ambiguity on this point, the court finds that the modifying phrase "with respect to any contract . . . including applications, receipts or binders" set forth in italics in the body of the memorandum, applies to both parts 1a and 1b of the Insurance and Related Operations Exclusion. Although Wausau does not claim otherwise, the court makes this observation in part because if part 1a were free of the limits established by the modifying phrase, the exclusion would essentially subsume the policy and render it illusory. *See also American Motorists Ins. Co. v. Southern Security Life Ins. Co.*, 80 F. Supp. 2d 1285, 1287-88 (M.D. Ala. 2000) (discussing policy language with a modifying phrase similar to that present in the IRO exclusion).

for mutual funds, pension or welfare funds, annuities, endowments, employee benefit plans or other similar activities; or (3g) performing any claim, investigative, adjustment, engineering, inspection, consulting, survey, audit, appraisal, actuarial or data processing service for a fee.

The DPS exclusion is far broader.  It precludes coverage that might otherwise apply to the rendering or failure to render any professional service.  Professional service is described as "insurance companies and insurance agencies of any kind, including all operations of additional named insureds."  Although the operations of the additional named insureds are not described by the policy, the titles of the additional named insureds suggest operations touching upon the industries of insurance, asset management, real estate, and funeral home services.  (Doc. # 34, Ex. 2, pp. 33-36).

### 3.    The Effect of the Exclusions

Based upon the court's review of the exclusions, as well as the parties' arguments in support of and in opposition to summary judgment, there is little question that the IRO and DPS exclusions effectively preclude coverage for liability arising from the exercise of professional services of insurance.  Part 1 of the IRO exclusion comprehensively reaches the obligations an insured might assume, with respect to any contract or treaty of insurance or reinsurance.   The DPS exclusion specifically applies to insurance companies and agencies of any kind, while Part 3 of the IRO exclusion, in a detailed and comprehensive fashion, lists those professional services affected by the exclusions.  The court does not find the exclusions ambiguous in their effect, and if anything, the court believes them to be

12

slightly redundant insofar as they preclude coverage for liability arising out of the rendering or failure to render professional services related to insurance.[6]

By its argument Torchmark does not aver a failure by the exclusions to include professional service liability. (Doc. # 49, pp. 2, 10-14). Torchmark instead advocates a more refined construction, arguing that the claims of negligent and wanton hiring, training and supervision are beyond the reach of the exclusions and are covered under the CGL. In light of the explicit language of the exclusions, such candor and focus are not at all surprising. And this candor and focus are largely matched by Wausau, who in essence admits that the operational language of the exclusions does not reach these claims. Wausau does not, however, concede coverage. It maintains that the claims allegedly beyond the scope of the exclusionary language are nevertheless excluded because they are founded upon the very conduct – conduct involving professional services of insurance – excluded by the policy. (Doc. # 57, pp. 1-2, 4-5).

As discussed *supra*, Alabama law controls the resolution of this motion. Unfortunately, neither party has come forward with any Alabama case or law that dictates, or even suggests, a result. Instead, the court is presented with cases from varying jurisdictions that, taken as a whole and in light of arguments advanced by the parties,

---

[6] Indicative of this point is the argument Wausau advances with respect to the DPS exclusion. In its initial submission to the court, Wausau likens the DPS exclusion to a professional services exclusion considered in the case *American Motorists Insurance Co. v. Southern Security Life Insurance Co.*, 80 F. Supp. 2d 1285 (M.D. Ala. 2000). (*See* Doc. # 33, p. 19 ("[The District Court] found that the sale and preparation of insurance policies are professional acts for which coverage is excluded under the professional services exclusion.")). As far as the court can discern, however, the professional services exclusion at issue in *American Motorists* is virtually identical to Part 3 of the IRO exclusion. *See American Motorists*, 50 F. Supp. 2d at 1288-89. That Wausau would seek to apply its rationale to the DPS exclusion only further bolsters the court's view that the DPS exclusion and Part 3 of the IRO exclusion accomplish virtually the same result with respect to coverage.

present the court with a pair of possible paths down which it can proceed. *See Liberty Life Ins. Co. v. Travelers Indemnity Co.*, No. 98-1674, 1999 U.S. App. LEXIS 13796 (4th Cir. June 23, 1999); *American Motorists Ins. Co. v. Southern Sec. Life Ins. Co.*, 80 F. Supp. 2d 1285 (M.D. Ala. 2000); *Westchester Fire Ins. Co. v. Metropolitan Life Ins. Co.*, No. 602970/98, N.Y. Sup. Ct. 2000 (*see* Doc. # 34, Ex. 4); *Community Hospital v. American Home Assurance Co.*, 567 N.Y.S.2d 122 (N.Y. App. Div. 1991).

The *American Motorists* case merits some discussion, for it provides a good illustration of the position taken by Wausau. *American Motorists* presented facts starkly similar to the instant case. There an insurance company filed a complaint for declaratory judgment seeking a declaration that it was neither obligated to defend nor indemnify an insurer and its agents in lawsuits alleging misrepresentations and various negligence-based claims arising from the sale of insurance contracts to private persons. *See American Motorists*, 80 F. Supp. 2d at 1286.[7]  The insurer argued that the claims fell within an insurance and related operations exclusion (which in part excluded coverage for the exercise of professional services). *See id.* at 1287-88. In considering exclusionary language virtually identical to the language contained in the Part 3 of the IRO exclusion, the court found the exclusion to apply to all claims alleged against the insurer and its agents; claims of both misrepresentation arising from the sale of insurance contracts and claims of negligent training and supervision. *See id.* at 1289.

---

[7] In its submission in opposition to summary judgment, Torchmark argues that the *American Motorists* court did not consider claims of negligent hiring and supervision. (Doc. # 49, pp. 19-20). As demonstrated both by the reply submission of Wausau (Doc. # 57, Ex. 6, 7), as well as a slightly more thorough reading of the case, this assertion is not accurate.

14

In this case, the professional acts performed by Southern Security and its agents were the sale and preparation of insurance policies.  In selling the insurance policies to [the plaintiffs], Southern Security and its agents made representations about the terms and conditions of the insurance contracts - a pursuit which involves professional activity.  Furthermore, the damages allegedly suffered by [the plaintiffs] arose directly from the performance of those professional services.  If Southern Security and its insurance agents had performed no professional services relative to the sale and marketing of insurance products, the [the plaintiffs] would have incurred no injuries.  Similarly, if insurance agents did not need to possess some specialized knowledge or skill, [the plaintiffs] would not have been damaged as a result of Southern Security's alleged failure to train and supervise its agents.  Therefore, given that Southern Security and its agents incurred liability in performing or failing to perform professional services, the court finds that coverage for all of the claims raised by [the plaintiffs] are excluded from coverage under the professional services exclusion.

*Id.*[8]

The rationale expressed *supra* possesses some appeal, and like sentiment appears to have been recently expressed by both the Alabama Supreme Court and the Alabama Court of Civil Appeals.  *See Auto-Owners Ins. Co. v. American Cent. Ins. Co.*, 739 So. 2d 1078 (Ala. 1999); *see also McCauley v. Estes*, 726 So. 2d 719 (Ala. Civ. App. 1998).  *Auto-Owner* involved the state high court's review of an award of summary judgment in favor of an insurer, in which the insurer received a declaratory judgment that it was neither obligated to defend nor indemnify its insured under a homeowner's policy in a lawsuit filed against him involving alleged unlawful hazing in a college fraternity.  *See Auto-Owners Ins. Co. v. American Cent. Ins. Co.*, 739 So. 2d 1078, 1079 (Ala. 1999).  The claims against the insured included intentional and reckless infliction of emotional distress, as well as claims predicated on the acts of  hazing, negligent supervision, and assault and battery.  *See id.*

---

[8]This idea is likewise expressed by the decision of the Supreme Court of New York County, New York in *Westchester Fire*. *See Westchester Fire*, Doc. # 34, Ex. 4, p. 22 ("Where conduct is excluded from coverage, negligence claims premised on that conduct are also excluded.").

at 1079, 1080.  The insurer had declined coverage on the basis of an exclusion in the policy that precluded coverage for injuries arising out of physical or mental abuse.  *See id.* at 1079-80.  In affirming summary judgment, the court found the hazing incidents as alleged to clearly constitute physical and mental abuse within the meaning of the policy exclusion. *See id.* at 1081-82.  More importantly for present purposes, the court also found "the claims in the underlying action alleg[ing] both intentional and unintentional acts . . . not severable so as to obligate American Central to provide a defense and indemnity as to some claims but not as to others."  *Id.* at 1082.[9]

In support of this conclusion the court cited three cases: two federal district court decisions and a decision from the Appellate Division of the Supreme Court of New York. *See Commercial Union Ins. Cos. v. Sky, Inc.*, 810 F. Supp. 249 (W.D. Ark. 1992); *Old Republic Ins. Co. v. Comprehensive Health Care Assocs.*, 786 F. Supp. 629 (N.D. Tex. 1992), *aff'd*, 2 F.3d 105 (5th Cir. 1993); *Board of Educ. v. Continental Ins. Co.*, 604 N.Y.S.2d 399 (N.Y. App. Div 1993).  Each of the three decisions cited involved claims of sexual harassment and other related negligence claims.  And in each case, the court excluded the negligence claims along with the sexual harassment claims, finding them "not mutually exclusive . . . [but] related and interdependent.  Without the underlying sexual harassment

_____

[9] *McCauley* involved the review of a trial court decision finding an insurer free of any  no obligation to defend or indemnify its insured in an action alleging invasion of privacy, intentional infliction of emotional distress, negligence, wantonness, and recklessness.  The decision turned on an exclusion in the policy precluding coverage for bodily injury or property damage the result of willful or malicious acts of the insured. *See McCauley*, 726 So. 2d at 720.  Despite the fact that the complaint presented claims of negligence (claims beyond the scope of the exclusionary language), the trial court found the complaint to allege only willful and malicious acts.  The claims, therefore, fell within the policy exclusion.  The Court of Civil Appeals affirmed this conclusion. *See id.* at 721-22.

there would have been no injury and obviously, no basis for a suit . . . for negligence." *See Old Republic Ins.*, 810 F. Supp. at 632; *see also Commercial Union Ins.*, 786 F. Supp. at 255.

The Federal District Court for the Middle District of Alabama reached a similar result when it considered whether an Intentional Damages exclusion in a policy issued to state teachers excluded coverage for claims alleging sexual abuse as well as the negligent failure to report known or suspected incidents of child abuse. *See Horace Mann Ins. v. McGee*, 840 F. Supp. 875, 876-77 (M.D. Ala. 1994). There the court held that the "Intentional Damages exclusion bars coverage for all harm directly attributable to [the defendant's] sexual abuse of his students, including any harm resulting from [his] failure to report himself for child abuse." *Id.* at 879. The law in Alabama thus seems to clearly embrace the argument advanced by Wausau. The question left unanswered, however, is whether the law applies to the instant case. The court believes that it does not.

When a plaintiff alleges master-servant negligence and wantonness claims such as those alleged against the subsidiaries, the plaintiff can establish a case through one of two means. The plaintiff can either show that the incompetency on the part of the servant (employee) was known by the master (employer), or that had the master exercised due diligence, he would have learned of the servant's incompetence or its likelihood. *See, e.g., Armstrong Bus. Servs. v. AmSouth Bank*, No. 1992302, 2001 Ala. LEXIS 304, at *45-*46, *48 (2001); *Ex parte Qureshi*, 768 So. 2d 374, 379 (Ala. 2000); *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993) (quoting *Lane v. Central Bank of Alabama*, 425 So. 2d 1098, 1100

(Ala. 1983)); *Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000).[10] If proof of this tort were relegated to the former means only, the court would be more apt to conclude that the interrelation between a claim of master-servant negligence and actions of the servant are so great that they cannot be separated as a matter of law. But the cases clearly show that proof of this tort can be accomplished by focusing strictly upon the actions, or lack thereof, of the master, independent of what the servant might have done. *See, e.g., Big B*, 634 So. 2d at 1003.

It is a truism to say that a claim of negligent training or supervision does not arise without a predicate action taken by the employee. But when the success of such a claim turns upon proving the wrongfulness of the actions of the employer, the court sees no basis upon which one can apply a professional services exclusion to actions of the employer not properly called professional services. The relationship between the actions of the employer and employee is, insofar as claim viability is concerned, irrelevant as a matter of law. And, contrary to the position adopted by the court in *American Motorists*, there is certainly no relationship between the actions such that this court could conclude that an insurance agent's need for specialized knowledge or skill is a necessary legal link to the rise of a claim for negligent training and supervision against that agent's employer. *See American Motorists*, 80 F. Supp. 2d at 1289. Such a premise embodies a disconnect,

---

[10] As the *Big B* Court observed, a claim of wantonness presents additional requirements in terms of proof. *See Big B*, 634 So. 2d at 1004 ("Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury."). This added level of proof does not, however, change the fact that a plaintiff can succeed on such a theory by focusing exclusively upon the actions of the employer. Those actions may and often will entail knowledge of employee wrongdoing. *See id.* at 1004-05. But this knowledge does not so intertwine the employee's action with the tort so as to justify exclusion under the policy.

perhaps more clearly illustrated through the substitution of a violent act, sexual harassment perhaps, as the predicate action of the employee.[11]

For the foregoing reasons, the court finds that the claims such as negligent and wanton supervision and training are not so interrelated and interdependent with the alleged wrongful actions of the insurance agents to permit an extension of the policy exclusions to them.  Insofar as Wausau moves for summary judgment that it is under no obligation to defend and indemnify the Torchmark defendants against such claims, its motion is denied. This conclusion does not, however, require Wausau to defend and indemnify the Torchmark defendants against those claims that are within the exclusionary language of the policy. The law in Alabama clearly provides that when a "complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Acceptance Ins*., 2001 Ala. LEXIS at *29; *see also Blackburn*, 667 So. 2d at 670.  The court therefore finds that Wausau is under no obligation to defend and indemnify the Torchmark defendants against those claims that fall within the professional services exclusion of the policy.  This conclusion applies to all claims alleged in the underlying lawsuits, other than those of negligent or wanton conduct on the part of the subsidiaries in the hiring, training, supervision of their employees.  Summary judgment as to this aspect of Wausau's motion is thus due to be granted.

---

[11]Moreover, training and supervision are common throughout employment.  It is difficult for the court to see what might bring the functions of training and supervision into the scope of these exclusions -- given both the description of the term "Professional Services" provided by the policy and the definition of the term advanced by Wausau.  The law calls for a construction of unclear insurance contracts and their exclusions in favor of the insured.  These exclusions cannot, therefore, be said to embrace the actions of the agencies as simple employers.

## C. The Issue of Delivery

The Torchmark defendants also argue that Wausau is estopped from enforcing the policy exclusions at issue because it failed to deliver the policy to the subsidiaries – additional named insureds in the policy – consistent with § 27-14-19(a) of the Alabama Code. (Doc. # 49, pp. 22-25 (discussing *Brown Mach. Works & Supply Co. v. Ins. Co. of N. America*, 659 So. 2d 51 (Ala. 1995)). The statute provides in part:

Subject to the insurer's requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance, except where a condition required by the insurer has not been met by the insured

Ala. Code § 27-14-19(a). Wausau does not dispute its failure to deliver the policy, but contends that its delivery of copies of the policy to both Torchmark, the owner or financial controller of all the additional named insureds listed in the policy, and to the insurance broker for the Torchmark defendants satisfies its statutory obligations under § 27-14-19(a). Wausau likewise observes that the failure of Torchmark to demonstrate lack of notice or prejudice as a result of the alleged improper delivery should preclude this court from suspending enforcement of the exclusions. Wausau premises this argument on the maxim that insurance coverage should generally not be enlarged by waiver or estoppel. *See, e.g., Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987).

In *Brown Machine Works & Supply Co.*, the Alabama Supreme Court, in response to a certified question from the Federal District Court for the Middle District of Alabama, held that "when an insurer has not complied with § 27-14-19(a) and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid

20

coverage exclusion." *Brown Machine*, 659 So. 2d at 58.  Two aspects of this holding are important in this court's view.  First, and most obviously, the failure to comply must prejudice the insured.  Second, the imposition of estoppel is a permissive remedy.  As indicated by the *Brown Machine* court's holding, the rationale behind this remedy represents a balancing of competing interests.  On the one side is the rule that insurance coverage should not be expanded by waiver or estoppel.  On the other is the goal of the statute: to ensure that insureds receive notice and remain aware of the coverage issued to them under a policy.  *See id.* at 58.

Further indicative of the fact that the remedy is not a hard-and-fast penalty imposed upon *de miminis* non-compliance with the statute is the *Brown Machine* court's discussion of who might actually be entitled to the protections afforded by the statute.  *See id.* at 58-61.  Although the court left the question open, it quite clearly observed that additional named insureds – such as the Torchmark subsidiaries in the instant case – might not, under certain circumstances, be entitled to a copy of the policy pursuant to the statute.  The court certainly did not foreclose the inclusion of additional named insureds within the ambit of the statute – indeed it seems that additional named insureds would in a majority of the circumstances be deserving of the statute's protections.  *See id.* at 60-61.

The relevance of this observation, however, is important in light of the permissiveness of the remedy, and the fact that Torchmark has shown no prejudice as a result of Wausau's failure to deliver copies of the policy to the subsidiaries.  The evidence before the court establishes that Torchmark either owned or controlled the subsidiaries and was responsible for payment of the policy premiums.  The evidence also establishes that

Torchmark's insurance broker was responsible for procuring insurance coverage for Torchmark and its subsidiaries. Both Torchmark and the broker received copies of the policy. Although the court is not willing to say whether the additional named insureds should likewise have received copies, the court is satisfied that even if the additional named insureds deserved copies of the policy pursuant to § 27-14-19(a), the failure of Wausau to deliver the copies does not by itself foreclose the enforcement of the exclusions in the policy against the subsidiaries.

**V.    Conclusion**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____ of March, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE